Filed 5/23/22  Emery v. Marchick CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PATRICIA ANN EMERY, as Trustee, etc., | B307999 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC681619) |
| v. | |
| JENNY MARCHICK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Summa and Megan A. Maitia for Defendant and Appellant.

June Babiracki Barlow, Neil Kalin and Jenny Li for California Association of Realtors as Amicus Curiae on behalf of Defendant and Appellant.

Ervin Cohen & Jessup, Michael C. Lieb and Andrew J. Peterson for Plaintiff and Respondent.

———————————————

Defendant Jenny Marchick appeals from an order awarding attorney fees to plaintiff Patricia Ann Emery as Trustee of the Patricia Ann Emery and John H. Snyder IV Trust (Emery) following a bench trial concerning a lot line dispute.

In 2012, Marchick offered to purchase a residential property from Emery using a California Association of Realtors' (CAR) Residential Purchase Agreement form (Purchase Agreement). The Purchase Agreement's attorney fee clause required the parties to attempt to mediate disputes arising out of the agreement or any resulting transaction before filing a lawsuit. As part of her counter offer, Emery required Marchick to agree to cooperate in effectuating a lot line adjustment (Cooperation Agreement). The Cooperation Agreement included a different attorney fees clause, which did not require mediation before filing suit. Marchick agreed, the parties executed the documents, and escrow closed on November 2, 2012.

Marchick failed to abide by the Cooperation Agreement, and following unsuccessful negotiations between the parties' counsel and bilateral threats to sue, Emery filed a complaint for breach of the Cooperation Agreement against Marchick. The trial court found Marchick breached the Cooperation Agreement, entered judgment in favor of Emery in the amount of $285,000, and awarded $196,231.50 in attorney fees to Emery as the prevailing party.

Marchick's sole contention on appeal is that the trial court erred in awarding attorney fees to Emery because Emery failed to pursue mediation before filing her complaint. Under principles of contract interpretation, we conclude the fee provision under the Cooperation Agreement, and not the Purchase Agreement, applied to the parties' dispute. The Cooperation Agreement was

2

the later-negotiated document, drafted by the parties. Notwithstanding the fee clause in the Purchase Agreement, the parties chose to include another attorney fee clause in the Cooperation Agreement. In construing the agreements, we conclude the Cooperation Agreement's fee clause supersedes that of the Purchase Agreement. Thus, the trial court did not err in awarding attorney fees to Emery. We affirm.

## BACKGROUND

### A. Factual Summary

#### 1. *The Agreements*

In September 2012, Marchick viewed a residential property for sale on Berkley Avenue in Los Angeles, California. Emery's realtor explained to Marchick that Emery also owned and resided at an abutting property on Berkley Circle and that Emery used a portion of the Berkley Avenue property as an extension of her backyard (the Disputed Parcel). Emery intended to keep the Disputed Parcel following any sale of the Berkley Avenue property.

On September 24, 2012, Marchick used a CAR Purchase Agreement form to extend an offer to buy the Berkley Avenue property for $550,000. Paragraph 21 of the form provides for attorney fees: "In any action, proceeding, or arbitration between [b]uyer and [s]eller arising out of this [a]greement, the prevailing [b]uyer or [s]eller shall be entitled to reasonable attorney fees and costs from the non-prevailing [b]uyer or [s]eller, except as provided in paragraph 26A."

Paragraph 26 of the form governs disputes between the parties and states in relevant part in subparagraph A: "MEDIATION: Buyer and [s]eller agree to mediate any dispute

3

or claim arising between them out of this [a]greement, or any resulting transaction, before resorting to arbitration or court action. . . . If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED." Paragraph 26 further states that any dispute "not settled through mediation shall be decided by a neutral, binding arbitration."

On September 25, 2012, Emery counter-offered, using CAR counter offer and addendum forms. The counter offer stated "The terms and conditions of the [Purchase Agreement] are accepted subject to the following: [¶] . . . [¶] [s]ee Addendum #1."[1] Addendum #1 listed six additional terms, including raising the purchase price to $560,000 and requiring Marchick "to sign [the] attached Cooperation Agreement."

The Cooperation Agreement stated, "As a condition precedent to the sale of [the Berkley Avenue] property, [Emery] requires that the [b]uyer(s) agree(s) to cooperate, in all respects, with the lot line adjustment that was or will be submitted to the City of Los Angeles . . . ." "Buyer(s) agree(s) that, as part of the agreement to purchase the [Berkley Avenue] property . . . to

---

[1] The counter offer also stated, "The following attached addenda are incorporated into this [c]ounter [o]ffer: . . . Cooperation Agreement."

4

cooperate in good faith, in all respects, with the [l]ot [l]ine [a]djustment.  Buyer(s) also agree(s) that the purchase price of this property reflects the consideration contemplated by the [p]arties relating to this [a]greement."

The Cooperation Agreement included an attorney fees provision:  "Attorney's Fees and Costs.  In the event a party is required to enforce any of the rights granted under this [a]greement, the other party shall be entitled to recover from the breaching party the reasonable attorneys' fees, costs and expenses incurred as a result of such breach."

The Cooperation Agreement also provided that it was "jointly drafted by the [p]arties," and included an integration clause, stating, "[t]his [a]greement and other documents referred to herein or delivered pursuant hereto contain and constitute the entire agreement of the parties with respect to the transactions contemplated hereby and supersede all prior negotiations, commitments, agreements and understandings among them with respect thereto."

The parties executed the Purchase Agreement, counter offer, addendum, and Cooperation Agreement.[2]  On November 2, 2012, escrow closed.

_____

[2] Marchick signed the Purchase Agreement on September 24, 2012.  Emery signed the counter offer and addendum on September 26, 2012.  Emery signed the Cooperation Agreement on September 27, 2012, but the Cooperation Agreement states that it was executed as of the effective date, September 26, 2012.  Marchick signed the counter offer and addendum on September 28, 2012.  Her signature on the Cooperation Agreement is undated, but as noted previously, is deemed to have been signed as of the effective date.  Emery

### 2. *The Parties Are Unable to Negotiate a Resolution to Their Dispute*

Marchick failed to cooperate fully in effectuating the lot line adjustment. As the trial court observed in its statement of decision, "Marchick refuse[d] to execute documents [necessary] to convey the Disputed Parcel back to Emery." By November 2016, both parties had retained counsel and unsuccessfully attempted to negotiate a resolution to the dispute. On September 17, 2017, Emery's counsel stated by letter to Marchick's counsel that the dispute could not proceed beyond the five-year mark and that the parties therefore needed to reach a resolution within the next 30 days.

Five weeks later, Emery's counsel sent a proposed settlement agreement to Marchick's counsel and suggested the parties execute a tolling agreement. On October 25, 2017, Marchick rejected the settlement and tolling agreements and threatened to sue to force Emery to remove a deck from the Disputed Parcel. Marchick's counsel offered to accept service of Emery's complaint. Neither party referred to the need or desire to mediate prior to the initiation of litigation.

## B. Procedural History

### 1. *The Complaint, Motion to Compel Arbitration, and Trial*

On October 31, 2017, Emery filed a complaint, alleging Marchick breached the Cooperation Agreement and seeking specific performance or, in the alternative, damages. Emery also named Marchick's mortgage lenders, Prospect Mortgage, LLC

---

signed the Purchase Agreement on October 1, 2012, "subject to attached counter offer."

6

(first lienholder)[3] and Bank of America, N.A. (second lienholder) (the Banks), as defendants "solely to provide [them] notice of a proceeding as to real property which . . . they hold one or more security interests."

Marchick moved to compel arbitration. Emery opposed arbitration on the basis that the Banks were not signatories to the Purchase Agreement, and thus, not required to arbitrate. After learning that the Banks opposed arbitration, the court denied Marchick's motion.

Following a five-day bench trial, the trial court found Marchick breached the Cooperation Agreement. However, it found specific performance was inappropriate and instead awarded $285,000 in damages to Emery, subject to set off for unreimbursed property taxes through the date of judgment. The court retained jurisdiction to determine post-trial motions, including Emery's motion for attorney fees, and entered judgment on March 16, 2020.[4]

2.     *Attorney Fees*

On April 6, 2020, Emery moved for $204,386.50 in attorney fees as the prevailing party against Marchick. Finding the attorney fee clause in the Cooperation Agreement governed, the trial court rejected Marchick's argument that Emery forfeited

---

[3] Prospect Mortgage assigned its loan to Nationstar Mortgage, LLC.

[4] The court found in Emery's favor on all causes of action alleged in Marchick's cross-complaint, including declaratory relief, trespass, and injunctive relief.

On May 14, 2020, Marchick appealed the judgment. (See *Emery v. Marchick*, B305976.) Following a settlement between the parties, that appeal was dismissed on November 30, 2021.

such fees when she failed to attempt to mediate the dispute.  It granted attorney fees to Emery in the reduced amount of $196,231.50.

Marchick timely appealed.

## DISCUSSION

" 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.'  [Citations.] 'Such intent is to be inferred, if possible, solely from the written provisions of the contract.'  [Citations.]  'If contractual language is clear and explicit, it governs.'  [Citation.]"  (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195.)  In ascertaining the intention of the parties, courts apply rules of contract interpretation.  (See Civ. Code, § 1637.)

"The 'interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence. . . .'  [Citations.]"  (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1256.) Additionally, we review the determination of the legal basis for an award of attorney fees de novo as a question of law. (*Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 767.)

Whether Emery is entitled to attorney fees depends on which attorney fee clause applies to the parties' lot line dispute. Based on principles of contract interpretation, we conclude the clause stated in the Cooperation Agreement prevails.

We begin with the principle that a counter offer supplants the terms of the offer, and to the extent the parties' final agreement consists of terms from both the offer and counter offer, inconsistencies are generally resolved in favor of the later-negotiated terms.  (See Civ. Code, § 1585 ["An acceptance must be absolute and unqualified . . . [and a] qualified acceptance is a

8

new proposal"]; *Frangipani v. Boecker* (1998) 64 Cal.App.4th 860, 863 ["Where there is an inconsistency between two agreements both of which are executed by all of the parties, the later contract supersedes the former"].)

Additionally, to the extent they are inconsistent, terms negotiated by the parties prevail over form, boilerplate terms. (See Civ. Code, § 1651 ["parts which are purely original control those which are copied from a form"); Rest.2d Contracts, § 203(d) ["separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated"]; 11 Williston on Contracts (4th ed. 2021) § 32:13 [observing added terms " 'represent an express manifestation of the parties' actual intentions and take precedence over any inconsistent provisions in the printed form' "].)

Further, courts interpret contracts to give effect to every part and avoid constructions that render terms surplusage. (See Civ. Code, § 1641 [providing contracts should be interpreted "so as to give effect to every part"]; Code Civ. Proc., § 1858 ["In the construction of a[n] . . . instrument, the office of the [j]udge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, *or to omit what has been inserted*; and where there are several provisions or particulars, such a construction is, if possible, to be adopted *as will give effect to all*" (italics added)]; *Rice v. Downs* (2016) 248 Cal.App.4th 175, 186 ["An interpretation that leaves part of a contract as surplusage is to be avoided"].)

Applying these principles, it follows that the Cooperation Agreement's attorney fee clause superseded the Purchase Agreement's fee clause for purposes of the lot line dispute. The Cooperation Agreement is the later-negotiated document, and

9

Emery's counter offer evidences her intention that it supplant any inconsistent terms in the offer: "The terms and conditions of the above referenced document [Purchase Agreement] are accepted *subject to* . . . [¶] . . . [¶] . . . Addendum #1," which, in turn, referred to the Cooperation Agreement.[5] (Italics added.) Additionally, the Purchase Agreement is an eight-page form not drafted by either party, but by CAR, and the attorney fee clause therein is a standard portion of that form. In contrast, the Cooperation Agreement is a unique document, drafted by the parties. It is a reasonable inference that the parties' actual intention is better reflected in their negotiated agreement than in a pre-printed form. (See 11 Williston on Contracts, *supra*, § 32:13.) Moreover, in drafting the Cooperation Agreement, the parties chose to include an attorney fee clause notwithstanding that the Purchase Agreement already contained one. While paragraph 21 of the Purchase Agreement makes recovery of attorney fees contingent upon compliance with paragraph 26A, the attorney fees clause in the Cooperation Agreement does not. We must endeavor to interpret the Cooperation Agreement's fee clause to give it some effect. Yet, Marchick's interpretation in which the Purchase Agreement's attorney fee clause governs impermissibly renders the Cooperation Agreement's fee clause mere surplusage. (See *Rice v. Downs*, *supra*, 248 Cal.App.4th at

---

[5] Marchick argues that because Emery signed the Purchase Agreement last out of all the executed documents, it is the later document. This characterization places form above substance. The *counter* offer, including the Cooperation Agreement, was made in the usual course, i.e., after Marchick made her offer via the Purchase Agreement, and thus, is the later-negotiated instrument.

10

p. 186; see also Civ. Code, § 1641; Code Civ. Proc., § 1858.) Accordingly, we conclude the fee clause in the Cooperation Agreement prevails.[6]

Marchick argues the agreements' attorney fees provisions are not inconsistent and that the "resulting transaction" language in the Purchase Agreement is sufficiently broad to include the lot line adjustment. However, the attorney fee clauses are not consistent in the critical respect that paragraph 21 of the Purchase Agreement requires mediation pursuant to paragraph 26A before fees may be awarded, and the Cooperation Agreement does not, simply allowing the prevailing party to recover attorney fees relating to "enforce[ing] any of the rights granted under this [a]greement." Further, as explained above, to interpret the Purchase Agreement's clause to control the lot line dispute (under the resulting transaction language or otherwise) reduces the Cooperation Agreement's clause to surplusage. We decline to adopt such an interpretation.

Marchick contends Emery is judicially estopped from arguing the Purchase Agreement does not control because she "acknowledged that the Purchase[ ] Agreement's [d]ispute [r]esolution clause[, paragraph 26,] applied to the [lot line] dispute when the parties litigated Marchick's motion to compel arbitration." Yet, Emery did not admit the arbitration provision was applicable; rather, she argued that because the Banks could not be compelled to arbitration, the court should deny Marchick's motion to compel. Such a position is not "totally inconsistent"

_____

[6] Our conclusion is further supported by Marchick's counsel's threat to sue and his invitation to accept service of Emery's complaint without any reference to the mediation requirement in the Purchase Agreement.

11

with Emery's argument that the Purchase Agreement's dispute resolution clause is inapplicable. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [explaining that the doctrine of judicial estoppel requires, inter alia, that "the two positions are totally inconsistent"].)

Finally, Marchick and amicus CAR cite several opinions in which appellate courts have held a party's failure to comply with the mediation provision in the Purchase Agreement barred that party from seeking attorney fees. (See, e.g., *Lange v. Schilling* (2008) 163 Cal.App.4th 1412, 1414 ["We agree with other courts that the [mediation] agreement means what it says: plaintiff's failure to seek mediation precludes an award of attorney fees"]; *Frei v. Davy* (2004) 124 Cal.App.4th 1506, 1516 ["To recover attorney fees under the [Purchase Agreement], a party cannot commence litigation before attempting to resolve the matter through mediation"].) Our opinion should not be taken to mean that the CAR Purchase Agreement mediation provision is otherwise not enforceable or that mediation is not a laudable method of resolving disputes.[7] However, those cases and the

---

[7] In its amicus brief, CAR argues that the Purchase Agreement routinely incorporates ancillary documents, such as a seller finance addendum or home warranty plan. However, CAR does not provide additional relevant facts relating to those documents, including whether they contain separate attorney fee provisions. Nevertheless, our opinion is limited to the facts before us.

CAR also argues about the benefits of mediation, including that the cost of mediation is minor compared to the costs of litigation. In her response to CAR's brief and in furtherance of this argument, Marchick observes the litigation result, an award

12

instant matter are distinguishable. Unlike the cited cases, this matter involves a later-negotiated, party-drafted agreement that also includes an attorney fee clause (without a mediation requirement), incorporated into a counter offer, and the parties' dispute arises from a failure to fulfill a specific obligation under that agreement. The Purchase Agreement's attorney fee clause, and the mediation requirement stated therein, is thus inapplicable.[8]

---

of damages rather than specific performance, is not what Emery wanted and that the parties have since negotiated a post-trial settlement. Marchick seeks to augment the record in support of this position to include posttrial and postappeal documents evidencing the parties' negotiations, settlement, and acknowledgment of satisfaction of judgment.

Marchick's motion is denied. Except in extraordinary circumstances, appellate courts do not consider evidence that was not before the trial court at the time the court issued the order or judgment being appealed. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [" 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered' "].) Such circumstances are not present here.

[8] Because we have concluded that the Cooperation Agreement's attorney fee provision prevails, we need not consider Emery's alternate arguments that Marchick is estopped from relying on the Purchase Agreement or waived her right to do so as a result of attempting to "run out the clock" on the statute of limitations or to assert a claim of adverse possession.

**DISPOSITION**

We affirm the trial court's order granting attorney fees to Emery. Emery is to recover her costs on appeal.

NOT TO BE PUBLISHED


MORI, J.[*]


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14