Filed 10/2/23  Glaser Weil etc. v. Downs CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GARY P. DOWNS, <br><br> Defendant and Appellant. | B324408 <br><br> (Los Angeles County Super. Ct. No. BC506921, BC619678) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed.

Gary P. Downs, in pro. per., for Defendant and Appellant.

Glaser Weil Fink Howard Jordan & Shapiro, Michael Cypers and Elizabeth G. Chilton for Plaintiff and Respondent.

_____

In a prior appeal, we held that a security interest granted by William E. Rice to his counsel, Glaser Weil Fink Howard Avchen & Shapiro LLP (Glaser Weil),[1] had first-in-time priority over a charging order obtained by judgment creditor Gary P. Downs.  (*Rice v. Downs* (2021) 73 Cal.App.5th 213 (*Rice III*).)  We remanded for the trial court to make findings regarding the scope of Glaser Weil's security interest, including whether that interest covered the same property subject to Downs' charging order, and under what conditions Glaser Weil could collect the collateral.

On remand, the trial court found the security interest applied to the same collateral as the charging order, and Glaser Weil was entitled to collect that collateral because, inter alia, Rice had filed a bankruptcy petition, a specified event of default under the security agreement.  Accordingly, the trial court denied Downs' motion to enforce the charging order against the collateral to which Glaser Weil was entitled.

Downs appeals from the trial court's order, arguing the security agreement is invalid, and the bankruptcy did not constitute an event of default under the circumstances of this case.  We reject these arguments and affirm.

**BACKGROUND**

1.  *Original judgment and charging order*

In a business dispute between Downs and Rice, an arbitrator issued a decision that, inter alia, awarded Downs hundreds of thousands of dollars in attorney fees.  The trial court confirmed the award and entered judgment in June 2015.  On

_____

[1] Glaser Weil has since changed its name to Glaser Weil Fink Howard Jordan & Shapiro LLP.

2

appeal from that judgment, we affirmed the fees award but held that certain of Rice's cross-claims should not have been compelled to arbitration, and therefore could proceed in court. (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 179–180 (*Rice I*).)

Rice then filed a first amended complaint in the trial court reasserting his claims and adding new claims based on business transactions in Hawaii. The trial court denied Downs' motion to compel arbitration of the Hawaii-related claims and Downs appealed—we will refer to that appeal as *Rice II*. Rice attempted to proceed with his non-Hawaii-related claims despite the appeal, but the trial court agreed with Downs the proper course was to stay all proceedings pending a decision in *Rice II*.

In April 2018, while *Rice II* was still pending, Downs moved for a charging order directing various limited liability companies (LLCs) of which Rice was a member to pay any distributions to which Rice was entitled directly to Downs until the judgment confirming the arbitration award was satisfied. One of the LLCs included in the charging order motion was Triton Community Development LLC (Triton), a company of which Rice was founder and sole managing member.

The trial court denied the charging order motion, ruling that the order staying the proceedings while *Rice II* was pending also applied to Downs' attempt to enforce the judgment.

We issued our opinion in *Rice II* in July 2019, and the remittitur issued on September 23, 2019.[2] (*Rice v. Downs* (July 23, 2019, B286296) [nonpub. opn.].) On October 3, 2019, Downs again moved for a charging order against Triton and other LLCs affiliated with Rice. This time the trial court granted the

---

[2] The holding of *Rice II* is not relevant to this appeal.

motion, issuing a charging order requiring the LLCs to "pay any money or property due or to become due to [Rice] directly to [Downs]" until the judgment was paid.

## 2. *Proceedings to enforce the charging order*

On January 27, 2020, Rice filed for chapter 11 bankruptcy. In that proceeding, he disclosed that in February 2020, Triton had paid $450,000 to Glaser Weil, the firm representing Rice in his litigation against Downs. The bankruptcy court dismissed Rice's case in April 2020, finding that "in the interest of judicial economy, the parties should continue to litigate in state court."

On May 1, 2020, Downs moved in the trial court to enforce the charging order, contending Triton's payment to Glaser Weil violated the order.

In opposition, Rice claimed that months before Downs moved for the charging order in October 2019, Triton had entered into an agreement with Glaser Weil to become a co-obligor on Rice's debt to the law firm. Simultaneous with that agreement, Rice had granted Glaser Weil a security interest in his membership in Triton, which Glaser Weil had perfected by filing a UCC financing statement with the Secretary of State.

As evidence of these transactions, Rice filed a declaration summarizing the terms of Triton's agreement with Glaser Weil to become co-obligor on Rice's debt, and Rice's agreement with Glaser Weil granting the security interest. A Glaser Weil partner also filed a declaration summarizing the terms of the security interest, and attached the UCC financing statement filed with the Secretary of State. The agreements themselves were not provided to the trial court.

Rice argued that Triton's payment to Glaser Weil was not a distribution to Rice subject to the charging order, but rather "a

4

payment made by Triton to satisfy its own debt" as co-obligor on Rice's debt. Alternatively, to the extent the payment was a distribution to Rice, Rice argued Glaser Weil's perfected security interest in Triton had first-in-time priority over Downs' charging order.

In reply, Downs argued that Triton's payment to Glaser Weil was for legal services provided to Rice, and therefore was a distribution subject to the charging order. He further argued, inter alia, that the security interest had no effect absent a default, which had not occurred, and that it would be inequitable to allow Rice to use Triton to evade the charging order because Triton was Rice's alter ego.

After several hearings, the trial court ruled in Downs' favor. The court found Triton was Rice's alter ego, thus rejecting the argument that Triton's payment to Glaser Weil was for Triton's own obligations. The court agreed in theory that Glaser Weil's security interest in Triton had priority over the charging order, but found Downs nonetheless had priority based on his earlier, unsuccessful motion for a charging order. The court further ruled under its equitable powers that the payment was improper and in contravention of the charging order. The court ordered Glaser Weil to pay Downs $450,000.

### 3. Rice III

Glaser Weil appealed, and we reversed the disgorgement order in an opinion certified for partial publication. (*Rice III*, *supra*, 73 Cal.App.5th at pp. 217–218.) We agreed with Downs that Triton's payment to Glaser Weil was effectively a distribution to Rice, and therefore subject to the charging order. (*Id.* at pp. 225–229.) We held, however, that Glaser Weil's security interest had priority over the charging order, because

5

Glaser Weil had perfected that interest before Downs moved for the charging order in October 2019.  (*Id.* at p. 231.)  Downs' first, unsuccessful motion for a charging order did not grant him priority because the denial of that motion extinguished Downs' lien.  (*Id.* at p. 230, citing Code Civ. Proc. § 708.320, subd. (b).)  In the unpublished portion of the opinion, we held that, assuming arguendo the trial court under its equitable authority could override the statutory priority of a security interest, there was no equitable basis to do so under the circumstances of the case.

In reaching our holding, we noted that when the trial court ruled in Downs' favor under its equitable authority, it never made any factual findings as to the scope of Glaser Weil's security interest.  (*Rice III*, *supra*, 73 Cal.App.5th at p. 235.)  Specifically, the trial court never determined whether the security interest covered the same property subject to the charging order.  (*Ibid.*)  Nor had the trial court determined under what conditions Glaser Weil could enforce the security interest, including whether Rice first had to default on his debt, as Downs argued.  (*Ibid.*)  We therefore remanded "for the trial court to determine the terms of Glaser Weil's security interest."  (*Ibid.*)  We "express[ed] no opinion as to the scope of that inquiry, including whether the trial court may or should allow additional evidence."  (*Ibid.*)

### 4.    *Evidence presented on remand*

Following the remittitur in *Rice III*, Glaser Weil and Downs filed memoranda and supporting declarations in the trial court addressing the issues to be considered on remand.  Glaser Weil included a copy of the agreement granting the security interest.

Under the agreement, Rice assigned to Glaser Weil "as collateral security, all of [Rice's] right, title and interest in the

6

following property . . . ." The "following property" included one hundred percent of Rice's membership in Triton, which the agreement referred to as the "Pledged Interests" (boldface & italics omitted). The property further included, inter alia, "all ownership interests, membership interests, shares, securities, moneys, instruments or property representing a dividend, a distribution or return of capital upon or in respect of the Pledged Interests," and "all rights of [Rice] to receive moneys or distributions with respect to the Pledged Interests due and to become due under or pursuant to the Relevant Documents. . . ." "Relevant Documents" was defined as "the Operating Agreement and all other organizational documents of [Triton]."

The agreement provided that, "[s]o long as no Event of Default shall have occurred and be continuing, [Rice] shall have the right to exercise all of [Rice's] rights under the Relevant Documents . . . including the right to exercise any and all voting rights, [and] the right to receive distributions on the Collateral to cause all revenues generated by the Property to be applied in accordance with the terms and provisions of" the amended engagement letter. In the amended engagement letter, as explained in the security interest agreement, Glaser Weil agreed to defer payment of certain legal fees.

Should an event of default occur, however, the agreement provided that "so long as such Event of Default shall continue, . . . all distributions on the Collateral shall be paid directly to [Glaser Weil]" and be applied to Rice's debt to the firm.

The agreement listed a number of "Events of Default," including "Failure of [Rice] to make any payment required under the Engagement Letters . . . within ten (10) calendar days after written notice from [Glaser Weil]." Other events of default

7

included, inter alia, "[a] petition in bankruptcy is filed by or against [Rice]."

A declaration from a Glaser Weil partner asserted that on February 21, 2020, the firm's managing partner e-mailed Rice demanding Triton pay $500,000 towards Rice's outstanding legal fees by February 29, 2020. Triton paid the $450,000 at issue in the instant case on or about February 28, 2020.

5.      *The trial court's ruling*

After a hearing, the trial court issued a written order denying Downs' motion to enforce the charging order. The court found the security interest Rice granted to Glaser Weil encompassed distributions from Triton, the same distributions covered by the charging order. Because *Rice III* had held the $450,000 constituted a distribution from Triton to Rice, and further that the security interest had priority over the charging order, Glaser Weil, not Downs, was entitled to that distribution.

The trial court rejected Downs' argument that Glaser Weil's security interest was never triggered because there had been no event of default. Citing California Uniform Commercial Code section 9609, subdivision (c), the court ruled that default was not required if the parties had agreed otherwise, and Rice, by arranging Triton's payment to Glaser Weil, had "agreed to Glaser Weil's enforcement of the Security Agreement." To the extent an event of default was required under the security agreement, the trial court found Rice's filing for chapter 11 bankruptcy satisfied this requirement.

The trial court declined to address Downs' arguments concerning a fraudulent conveyance. The court found that "[a]ny argument regarding Rice's intent in entering into the Security Agreement with Glaser Weil or filing for bankruptcy with respect

8

to the Charging Order is beyond the scope of the Court of Appeal's directions on remand."

Downs timely appealed.

## DISCUSSION

As an initial matter, Glaser Weil disputes some of Downs' arguments on appeal on the basis that those arguments exceed the scope of our remand in *Rice III*, or that Downs lacks standing to challenge provisions of the security agreement. We assume without deciding that Downs' arguments are both within the proper scope of our remand and that he has standing to make those arguments.

The trial court's ruling in this case involved contractual and statutory interpretation on undisputed facts. Our review is de novo. (See *The Fifth Day, LLC v. Bolotin* (2009) 172 Cal.App.4th 939, 946–947.) Under that standard, we agree with the trial court's ruling.

Downs does not dispute, nor could he, that the collateral defined under the security agreement includes Triton's distributions to Rice. Assuming arguendo Glaser Weil can only enforce the security agreement following the occurrence of an event of default, an issue we do not decide, Rice's filing of a bankruptcy petition qualified as an event of default under the terms of the security agreement. Upon the filing of that bankruptcy petition, therefore, Glaser Weil became entitled to all distributions from Triton to Rice.

Downs argues Glaser Weil's security interest is invalid because Glaser Weil never conferred any value on Triton, the entity that paid the money. Downs cites California Uniform Commercial Code section 9203, subdivision (b), which provides that a security interest is enforceable only if, inter alia, the

9

debtor has authenticated a security agreement that provides a description of the collateral, the debtor has rights in that collateral, and "value has been given."

As we held in *Rice III*, although Triton directly paid Glaser Weil, that payment was in partial satisfaction of Rice's debt to Glaser Weil and therefore constituted a distribution to Rice. (*Rice III*, *supra*, 73 Cal.App.5th at pp. 227–228.) Triton's distributions to Rice constituted collateral under the security agreement executed by Rice, collateral to which Rice had rights. Glaser Weil provided value to Rice in the form of legal services and an agreement to defer unpaid legal bills. The security interest therefore was valid under California Uniform Commercial Code section 9203, subdivision (b), without need for Glaser Weil to provide value to Triton.

In a similar vein, Downs argues Triton "received no consideration for entering into this . . . grant of a security interest." Triton was not party to the security agreement; rather, Rice assigned his personal interest in Triton, including the right to receive distributions, to Glaser Weil. It was Rice, as party to the agreement, that received consideration, not Triton. To the extent Downs argues that Triton received no consideration for the separate agreement under which it became co-obligor on Rice's debt to Glaser Weil, that agreement is not at issue in this case, and has no bearing on the validity of the security agreement.

Downs disputes the bankruptcy constituted a valid event of default, raising several arguments. He contends the parties never "intended the 2020 Rice Bankruptcy filing to be an Event of Default under the Security Agreement." In support, he cites filings by Rice in the bankruptcy court stating avoidance of the charging order was "[o]ne of the principal reasons" for the

10

bankruptcy petition.[3]  Further, Downs notes that Glaser Weil continued to represent Rice in the state court during and after the bankruptcy proceedings, and never asserted the bankruptcy constituted an event of default.  From this, Downs argues the bankruptcy petition had nothing to do with Rice's debt to Glaser Weil, and therefore could not be an event of default under the security agreement.

The plain, unambiguous language of the security agreement identifies as an event of default "[a] petition in bankruptcy . . . filed by or against [Rice]."  There are no limitations or qualifications on this event of default based on Rice's intent in filing the petition, and nothing suggesting a bankruptcy petition can only be an event of default if motivated by Rice's debt to Glaser Weil as opposed to another creditor.

Downs's interpretation also is not reasonable.  A bankruptcy petition is usually a sign one or more creditors are moving in, which is precisely when a primary lienholder would need to assert its rights to collateral.  It is thus not logical to conclude that the parties intended to limit events of default to bankruptcies arising solely from Rice's debt to Glaser Weil, as opposed to other creditors like Downs seeking the same collateral.

Downs argues Glaser Weil has waived any right to assert the bankruptcy as an event of default given that the firm

---

[3]  Here and elsewhere in his appellate briefing, Downs does not cite to supporting documents in the record, instead citing to his own briefing in the trial court that in turn cites purportedly supporting documents.  Although we could deem his arguments forfeited for failure to properly cite the record, we decline to do so.

11

continued to represent Rice after the bankruptcy filing. Downs characterizes this as continued performance in the face of a contractual breach, thus waiving claim of breach. The events of default under the security agreement, however, are not limited to breach of contract, and the filing of a bankruptcy petition is one such event. Downs' reliance on legal doctrine regarding contractual breaches does not help him.

Downs argues the bankruptcy court dismissed Rice's petition "as being filed in bad faith, thereby rendering it invalid and disqualifying it as an Event of Default . . . ." Downs mischaracterizes the record. The bankruptcy court's order dismissing the petition does not refer to, much less make a finding of, bad faith. Rather, the bankruptcy court concluded "that all the real action is in state court, not here," and "in the interest of judicial economy, the parties should continue to litigate in state court."

We acknowledge, as Downs notes, that at one point, the bankruptcy court stated that Rice "is not seeking a fresh start; he simply wishes to extract from the state court litigation the one piece he dislikes," referring to an attempt by Downs and another business associate to oust Rice from a company they all owned. This does not amount to a finding of bad faith, nor does Downs cite any authority compelling that conclusion.

Downs further questions Glaser Weil's reliance on the bankruptcy as an event of default by arguing that "the bankruptcy was filed February 27, 2020 and the payment to Glaser was made on February 28, 2020." Downs contends this demonstrates Triton had the funds on hand with the intent to pay them to Glaser Weil on Rice's behalf even absent the bankruptcy filing.

12

Again, Downs mischaracterizes the record. Rice filed for bankruptcy on January 27, not February 27, 2020. Glaser Weil demanded payment from Triton on February 21, almost a month after the bankruptcy was filed. The timing of events therefore supports, not undercuts, an inference that Glaser Weil made the demand because of the bankruptcy petition. At the very least, the timing of the payment does not indicate that Glaser Weil demanded it before an event of default had occurred.

Through all of the above-discussed (and rejected) arguments, Downs implies that Glaser Weil's reliance on the bankruptcy filing as an event of default is an ex post facto explanation for what otherwise was an inappropriate payment from Triton to Glaser Weil or, alternatively, that Glaser Weil and Rice deliberately orchestrated the bankruptcy filing to trigger the security agreement to avoid the charging order. The evidence cited by Downs—(1) Rice's statements in the bankruptcy court that he filed the petition to avoid the charging order, (2) Glaser Weil's continued representation of Rice after the filing of the bankruptcy petition, (3) Glaser Weil's failure to cite expressly the bankruptcy petition as the basis for the firm's demand for payment from Triton, and (4) the timing of Triton's payment relative to the filing of the bankruptcy petition—is insufficient to support either of Downs' contentions, for the same reason that evidence is insufficient to undercut our holding that the bankruptcy petition constituted a valid event of default.

Further, assuming arguendo Rice and Glaser Weil deliberately triggered the default, or Glaser Weil relied on the bankruptcy to justify the payment only after the fact, we do not see why it matters. Glaser Weil had the right without qualification to receive Rice's distributions from Triton upon the

13

occurrence of specified events, including a bankruptcy filing. Downs cites no authority that a borrower cannot trigger a default to allow a secured party to collect ahead of another creditor, or that a secured party cannot claim a default after the fact to justify its demand for collateral. Had the security agreement required Glaser Weil to make certain declarations or provide written notice before asserting its rights based on a bankruptcy filing, Downs might have an argument, but Downs identifies no such requirement in the security agreement. It is also conceivable that in some cases, principles of waiver, estoppel, or otherwise might preclude parties from asserting certain rights under a security agreement, but as discussed above, Downs has failed to persuade us any such principle applies.

Downs argues that if parties can orchestrate defaults or rely on them after the fact to trigger security interests, this would "leave[ ] the door wide open for friendly borrowers and debtors to collude to make up defaults in an effort to defraud unliked creditors." We note the only reason Glaser Weil could collect Triton's distributions to Rice ahead of Downs is that Glaser Weil had first-in-time priority over Downs. If Downs had filed a judgment lien or successfully moved for a charging order before Glaser Weil obtained its security interest, then Glaser Weil would be out of luck regardless of any efforts to trigger a default or claim a default retroactively. Downs' attempt to recharacterize this case as about something other than lien priority is not well taken.

Downs argues the trial court erred in interpreting California Uniform Commercial Code section 9609 to allow Glaser Weil to trigger the security interest without a default if Rice so agreed. Given our conclusion that Rice's bankruptcy

14

petition constituted an event of default, we need not reach this argument.  We similarly do not reach the parties' arguments relating to the existence of other events of default, such as nonpayment by Rice following written notice from Glaser Weil.

## DISPOSITION

The order is affirmed.  Respondent is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.