Filed 9/22/25  Bautista v. EastWestProto CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LUZ BAUTISTA, | B342679 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV03807) |
| v. | |
| EASTWESTPROTO, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Leibl, Miretsky & Mosely, Michael Miretsky and J. Adam Laufer, for Defendant and Appellant.

Messrelian Law Inc. and Harout Messrelian for Plaintiff and Respondent.

_____

This is an appeal from an order denying a petition to compel arbitration filed by defendant and appellant EastWestProto, Inc. doing business as Lifeline Ambulance (Lifeline).  The trial court found that an arbitration agreement executed by plaintiff and respondent Luz Bautista at the outset of her employment with Lifeline excluded from its scope her cause of action brought under the Labor Code Private Attorneys General Act of 2004 (PAGA, Lab. Code,[1] § 2698 et seq.).  In particular, a provision in the agreement reads:  "This Arbitration Agreement does not apply to Private Attorney General Actions, brought under California Labor Code § 2698 et seq., which must be litigated in a civil court of competent jurisdiction."[2]  The trial court found that this exclusionary clause applies to PAGA claims based on Labor Code violations (1) Bautista personally sustained (denominated in the case law as "individual" PAGA claims) and (2) suffered by other Lifeline employees ("representative" or "non-individual" PAGA claims).

On appeal, Lifeline argues:  (1) The trial court lacked authority to decide whether the agreement applied to Bautista's individual PAGA claims because a provision of the parties' agreement delegated that issue to the arbitrator, and (2) the exclusionary provision covers only representative or non-individual PAGA claims.  Lifeline asks us to reverse the denial of its petition to compel arbitration and instruct the trial court either to (1) direct the arbitrator to decide whether Lifeline's

___

[1] Undesignated statutory citations are to the Labor Code.

[2] (Factual & Procedural Background, *post*.)  As shorthand, we refer to this provision as "the exclusionary clause" or "the exclusionary provision."

2

interpretation of the exclusionary clause is correct, or (2) compel arbitration of Bautista's individual PAGA claims and stay the remainder of the action.

We conclude that Lifeline forfeited reliance on the alleged delegation provision by failing to invoke it during the trial court proceedings, and we decline to exercise our discretion to excuse Lifeline's forfeiture. We also reject Lifeline's interpretation of the exclusionary provision because it is not a natural reading of the text. Accordingly, we affirm the order denying Lifeline's petition to compel arbitration.

## LEGAL BACKGROUND

### 1. PAGA and *Iskanian*

"The Legislature enacted the PAGA in 2003 after deciding that lagging labor law enforcement resources made additional private enforcement necessary ' "to achieve maximum compliance with state labor laws." ' [Citation.]" (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 184.) When Bautista commenced the instant proceeding in February 2024 (Factual & Procedural Background, *post*), PAGA provided in relevant part, "[A]ny provision of th[e Labor C]ode that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency" (LWDA) "for a violation of th[e Labor C]ode, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself

and other current or former employees . . . ." (See Stats. 2016, ch. 31, § 189 [then-operative version of § 2699, subd. (a)].)[3]

"An employee who brings a PAGA action to recover civil penalties acts ' "as the proxy or agent" ' of the state." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1116 (*Adolph*).) " 'The "government entity on whose behalf the plaintiff files suit is . . . the real party in interest." ' [Citation.] PAGA's default civil penalties are thus calculated ' "to punish the employer" for wrongdoing' [citation] and ' "to deter violations" ' [citation] rather than 'compensate employees for actual losses incurred' [citation]." (*Id.* at p. 1117.) Most of the civil penalties recovered in a PAGA action are remitted to the state, whereas the remainder is paid to aggrieved employees. (See *id.* at p. 1116.)

In June 2014, our high court held a provision in a "predispute" arbitration agreement that barred an employee from " 'assert[ing] . . . representative action claims . . . in arbitration or otherwise[,]' " which the *Iskanian* court deemed a waiver of the

---

[3] In July 2024, the Legislature amended section 2699, subdivision (a) to authorize "a civil action . . . by an aggrieved employee on behalf of the employee and other current or former employees *against whom a violation of the same provision was committed . . . .*" (See Stats. 2024, ch. 44, § 1, italics added [Assembly Bill No. 2288]; see also *Ford v. The Silver F, Inc.* (2025) 110 Cal.App.5th 553, 561, fn. 1 (*Ford*) [noting the Governor signed Assembly Bill No. 2288 in July 2024].) Although Bautista filed the operative first amended complaint in August 2024 (see Factual & Procedural Background, *post*), Lifeline does not argue that Assembly Bill No. 2288's amendments to section 2699 apply to this case (see also Stats. 2024, ch. 44, § 1 [amended § 2699, subd. (v)(1) provides that Assembly Bill No. 2288's changes apply to actions filed on or after June 19, 2024]).

employee's right to pursue PAGA actions, was "unenforceable as a matter of state law." (See *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360–361, 378, 384, 388 (*Iskanian*).)[4] The *Iskanian* court reasoned that "an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code. Because such an agreement has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law,' it is against public policy and may not be enforced." (*Iskanian*, *supra*, at p. 383, quoting Civ. Code, § 1668.) A PAGA waiver "also violates Civil Code section 3513's injunction that 'a law established for a public reason cannot be contravened by a private agreement.' [Citation.]" (*Iskanian*, at p. 383, quoting Civ. Code, § 3513.)

Although the *Iskanian* court acknowledged "the arbitration agreement [before it] can be read as requiring arbitration of individual [PAGA] claims [for Labor Code violations that an employee suffered] but not of representative PAGA claims" for Labor Code violations suffered by other employees, the high court rejected the employer's argument that an employee validly could waive the latter "representative" form of PAGA claim. (See *Iskanian*, *supra*, 59 Cal.4th at pp. 383–384, 391.) "[W]hether or not an individual claim is permissible under the PAGA, a prohibition of *representative* claims frustrates the PAGA's objectives. As one Court of Appeal has observed: '[A]ssuming it is authorized, a single-claimant arbitration under the PAGA for

_____

[4] As we explain in our Legal Background, part 2, *post*, the United States Supreme Court later overruled part of *Iskanian* in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River Cruises*).

individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code. That plaintiff and other employees might be able to bring individual claims for Labor Code violations in separate arbitrations does not serve the purpose of the PAGA, even if an individual claim has collateral estoppel effects. [Citation.] Other employees would still have to assert their claims in individual proceedings.' [Citation.]" (*Id.* at p. 384.)

The *Iskanian* court further held the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA) did not preempt a state law prohibition on PAGA waivers. (See *Iskanian*, *supra*, 59 Cal.4th at pp. 360, 384.) "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [LWDA] or aggrieved employees— that the employer has violated the Labor Code." (*Id.* at pp. 386– 387.) " '*[E]very* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.' [Citation.]" (*Id.* at p. 387.)

After the Supreme Court decided *Iskanian*, multiple California courts "endorsed the view espoused in *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123–1124, that *every* PAGA action is a representative action on behalf of the state and that 'a single representative PAGA claim *cannot* be split into an . . . individual [PAGA] claim and a [non-individual PAGA] claim' "

6

"through an arbitration agreement."  (See *Ford*, *supra*, 110 Cal.App.5th at pp. 559, 562–563 [collecting cases].)

## 2.    *Viking River Cruises* and *Adolph*

On June 15, 2022, the United States Supreme Court issued its decision in *Viking River Cruises*.  (*Viking River Cruises*, *supra*, 596 U.S. at p. 639.)  There, an employee executed an agreement to arbitrate any dispute arising out of her employment, which agreement "contained a 'Class Action Waiver' providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action."  (*Id.* at p. 647.)  "[The agreement] also contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court.  But under that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' "  (*Ibid.*)

After the employee filed a PAGA action against her employer in one of our state's trial courts, the employer "moved to compel arbitration of [the employee's] 'individual' PAGA claim— . . . meaning the claim that arose from the violation [the employee] suffered—and to dismiss her other PAGA claims." (See *Viking River Cruises*, *supra*, 596 U.S. at pp. 647–648.)  The trial court denied the motion, and the Court of Appeal affirmed on the grounds that "categorical waivers of PAGA standing are contrary to state policy and . . . PAGA claims cannot be split into arbitrable individual claims and nonarbitrable 'representative' claims."  (See *id.* at p. 648.)  The United States Supreme Court granted certiorari to "decide whether the [FAA] preempts a rule of California law that invalidates contractual waivers of the right

7

to assert representative claims under [PAGA]." (See *id.* at p. 643.)

*Viking River Cruises* identified two facets of PAGA pertinent to its analysis. First, the high court acknowledged, "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Viking River Cruises*, *supra*, 596 U.S. at p. 648.) Second, "PAGA claims are also called 'representative' when they are predicated on code violations sustained by other employees. . . . [W]hen the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees." (See *id.* at pp. 648–649.) The *Viking River Cruises* court utilized the terms "representative" and "non-individual" to refer to the latter type of claim. (See *id.* at pp. 662–663.)

The United States Supreme Court construed the *Iskanian* decision as announcing two rules vis-à-vis PAGA actions. First, "*Iskanian*'s principal rule prohibits waivers of 'representative' PAGA claims in the first sense. That is, it prevents parties from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum." (*Viking River Cruises*, *supra*, 596 U.S. at p. 649.) Second, according to the *Viking River Cruises* court, "*Iskanian* also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Viking River Cruises*, at p. 649.) Put differently, "*Iskanian*'s

8

secondary rule prohibits parties from contracting around [PAGA's] joinder device" that "permits 'aggrieved employees' to use the Labor Code violations they personally suffered as a basis to join to the action any claims that could have been raised by the State in an enforcement proceeding." (See *Viking River Cruises*, at p. 659.)

*Viking River Cruises* held that the FAA does not preempt *Iskanian*'s principal rule barring "a wholesale waiver of PAGA claims." (See *Viking River Cruises*, *supra*, 596 U.S. at p. 662.) Accordingly, the high court found the employment agreement before it "remain[ed] invalid insofar as [the agreement was] interpreted" to include such a wholesale waiver. (See *ibid.*) The agreement's severability clause, however, "entitled [the employer] to enforce the agreement insofar as it mandated arbitration of [the employee's] individual PAGA claim." (See *ibid.*) Although the trial court and the Court of Appeal found that California law barred splitting the employee's PAGA action into arbitrable individual claims and nonarbitrable representative claims, *Viking River Cruises* concluded the FAA preempted that "secondary rule" from *Iskanian* because it "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate[.]' [Citation.]" (See *Viking River Cruises*, at pp. 648, 659, 662.)[5]

---

[5] The *Viking River Cruises* court also rejected *Iskanian*'s conclusion that "a PAGA action lies outside the FAA's coverage entirely because . . . a PAGA action 'is not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the *state*.' [Citation]." (See *Viking River Cruises*, *supra*, 596 U.S. at p. 652, fn. 4, quoting *Iskanian*, *supra*, 59 Cal.4th at pp. 386–387.)

The high court thus found the FAA obligated the employee to arbitrate her "individual claim." (See *Viking River Cruises*, at p. 662.)

Turning to the remainder of the employee's PAGA action, the United States Supreme Court acknowledged that the employee's "non-individual claims" "may not be dismissed simply because they are 'representative.' " (See *Viking River Cruises*, *supra*, 596 U.S. at pp. 662–663.) The *Viking River Cruises* court opined, however, "PAGA provides no mechanism to enable a court to adjudicate nonindividual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. [Citation.] . . . As a result, [the employee] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Id.* at p. 663.) The United States Supreme Court issued its judgment in *Viking River Cruises* upon denying a petition for rehearing on August 22, 2022.[6]

In July 2023, our Supreme Court issued a decision disapproving of *Viking River Cruises*'s interpretation of PAGA's standing requirement. (See *Adolph, supra,* 14 Cal.5th at

_____

[6] (Supreme Court of the United States, Docket for Case No. 20-1573 https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-1573.html [as of Sept. 16, 2025], archived at <https://perma.cc/Y37T-7VA9>.) We, sua sponte, take judicial notice of the United States Supreme Court's docket for *Viking River Cruises*. (Evid. Code, §§ 452, subd. (d), 459.)

10

pp. 1104, 1114, 1119.) Specifically, *Adolph* held, "Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Id.* at p. 1114.) In arriving at this conclusion, the *Adolph* court explained, "Because '[t]he highest court of each State . . . remains "the final arbiter of what is state law" ' [citation], we are not bound by the [United States Supreme Court's] interpretation of California law." (See *id.* at p. 1119.) *Adolph* also reiterated that *Viking River Cruises* "left undisturbed" *Iskanian*'s holding that "a predispute categorical waiver of the right to bring a PAGA action is unenforceable[.] [Citation.]" (See *Adolph*, at p. 1117.)

### FACTUAL AND PROCEDURAL BACKGROUND[7]

We summarize only those facts relevant to our disposition of this appeal.

Bautista worked for Lifeline from August 2022 to approximately November 2023. On August 1, 2022, Bautista signed an "Arbitration Agreement" as a condition of her employment with Lifeline. As pertinent here, the agreement utilizes the following broad language to define its scope: "Any

---

[7] We derive our Factual and Procedural Background in part from undisputed aspects of the trial court's order denying Lifeline's petition to compel arbitration and admissions made by the parties in their filings. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2 (*Association for Los Angeles Deputy Sheriffs*) [utilizing this approach].)

claim, dispute or controversy that either [Bautista] may have against [Lifeline], . . . or [Lifeline] may have against [Bautista], arising from, related to, or having any relationship or connection whatsoever, with [Bautista's] . . . employment by, cessation of employment with, or other association with, [Lifeline] shall be submitted to and determined exclusively by final and binding arbitration . . . ."  The agreement further provides:  "This Arbitration Agreement is intended to apply, and applies, to the resolution of past, present and future disputes that otherwise would be resolved in a court of law and requires that all such disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Arbitration Agreement."

The arbitration agreement contains a section titled "Limitations on How This Agreement Applies."  (Boldface omitted.)  Included within that section is the exclusionary clause, which provides:  "This Arbitration Agreement does not apply to Private Attorney General Actions, brought under California Labor Code § 2698 et seq., which must be litigated in a civil court of competent jurisdiction."  Additionally, the agreement prescribes procedures governing arbitration, including the selection of the arbitrator, the site of the arbitration, the process for initiating arbitration, rules governing discovery and admission of evidence, the allocation of the arbitrator's fee, and a waiver of class and collective actions.

In February 2024, Bautista filed a complaint against Lifeline, alleging 16 causes of action under the Labor Code, PAGA, and the unfair competition law (Bus. & Prof. Code, § 17200, et seq.).  In July 2024, Lifeline filed a petition to compel

12

arbitration of Bautista's individual claims and stay the non-individual component of her PAGA cause of action.

In lieu of opposing Lifeline's petition, Bautista filed a first amended complaint on August 8, 2024, wherein she asserted a single cause of action under PAGA.[8]  On August 21, 2024, the trial court ordered the parties to submit supplemental briefing on Lifeline's pending petition to compel arbitration.  In its supplemental brief filed on September 4, 2024, Lifeline continued to seek arbitration of Bautista's individual PAGA claims.  On September 18, 2024, Bautista filed a supplemental brief, arguing

---

[8]  The trial court observed, "In the single cause of action in the [first amended complaint], [Bautista] states that she seeks 'only those penalties that are required to be shared with the LWDA as [Bautista] *is not seeking individual penalties/victim specific relief . . .* under this specific PAGA cause of action.' [Citation.]"  On appeal, Bautista maintains that she "waived individual PAGA penalties in the operative First Amended Complaint and the sole cause of action under PAGA was being pursued as a representative-only claim."

After Bautista filed her first amended complaint, we issued an opinion in which we held that "every PAGA action necessarily includes an individual PAGA claim."  (See *Leeper v. Shipt, Inc.* (2024) 107 Cal.App.5th 1001, 1005 (*Leeper*) [issued on Dec. 30, 2024].)  In granting review of the *Leeper* decision earlier this year, our high court explained the opinion may be cited for its persuasive value until a final decision is issued.  (See *Leeper v. Shipt* (Apr. 16, 2025, S289305) 331 Cal.Rptr.3d 450–451.)  Bautista does not argue that *Leeper* was wrongly decided.  Thus, in accordance with our decision in *Leeper*, we conclude Bautista raises individual and non-individual PAGA claims in her operative pleading.

13

that all PAGA claims are excluded from the scope of the arbitration agreement.

On September 25, 2024, the trial court denied Lifeline's petition to compel arbitration. As a preliminary matter, the court found the FAA governs the agreement. Next, the court found that the exclusionary clause "expressly requires that any PAGA action—without making a distinction between individual or representative claims—'be litigated in a civil court of competent jurisdiction.' [Citation.]" The court concluded, "[B]ecause the arbitration agreement by its plain language provides a wholesale exclusion of PAGA actions, the arbitration agreement does not apply to the dispute."

Lifeline timely appealed from the order denying its petition to compel arbitration.[9]

### APPLICABLE LAW AND STANDARD OF REVIEW

" 'In ruling on a motion to compel arbitration, the trial court shall order parties to arbitrate "if it determines that an agreement to arbitrate the controversy exists . . . ." [Citation.] "[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense . . . ." [Citation.]' " (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 662 (*Western Bagel Co., Inc.*).)

"The FAA 'provides that a contractual arbitration provision "shall be valid, irrevocable, and enforceable, save upon such

_____

[9] (See Code Civ. Proc., § 1294, subd. (a) ["An aggrieved party may appeal from: [¶] . . . An order dismissing or denying a petition to compel arbitration."].)

14

grounds as exist at law or in equity for the revocation of any contract,"' and it also ' " "declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner."[10] [Citation.]' [Citation.] ' "[E]ven when the [FAA] applies, interpretation of the arbitration agreement is governed by state law principles. . . . Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . . " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . ." ' " ' [Citation.]" (*Western Bagel Co., Inc.*, *supra*, 66 Cal.App.5th at p. 662.)

" 'We review the trial court's interpretation of an arbitration agreement de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence.' [Citation.]" (*People v. Maplebear Inc.* (2022) 81 Cal.App.5th 923, 930; see Factual & Procedural Background, *ante* [the trial court did not rely upon extrinsic evidence in its decision].)

" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned." ' [Citation.] To succeed[,] . . . [an appellant] must first establish error. . . . ' "[T]he most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct." [Citation.] It is the appellant who bears the burden of overcoming that presumption.' [Citation.]" (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th

***

**10** The parties do not contest the trial court's ruling that the FAA governs the arbitration agreement. (Factual & Procedural Background, *ante* [noting the trial court rendered this finding].)

467, 554–555, first alteration in original.)  To "rebut[ ] the presumption of correctness accorded to the trial court's decision," the appellant must " ' " 'supply[ ] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " [Citation.]' [Citations.]" (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 776–777.)

## DISCUSSION

Lifeline maintains, "Properly read, the [exclusionary] clause applies only to those claims that, by law, must proceed in civil court," that is, non-individual PAGA claims.[11]  Thus, Lifeline argues the trial court should have compelled Bautista to arbitrate her individual PAGA claims and stayed litigation of the non-individual component of her PAGA action.

We reject Lifeline's construction of the exclusionary clause for the reasons set forth in Discussion, part B, *post*.  Before reaching that question, however, we decide whether Lifeline forfeited its argument that the arbitrator has exclusive authority to determine whether Bautista's individual PAGA claims fall within the scope of the arbitration agreement.  (Discussion, part A, *post*.)

---

[11] Lifeline does not cite any authority establishing that an employee and an employer cannot agree to arbitrate non-individual PAGA claims.  Bautista likewise proceeds on the assumption that non-individual components of PAGA actions are not arbitrable, yet fails to identify clearly her rationale for arriving at that conclusion.  We assume solely for the purposes of this appeal the parties are correct that a non-individual PAGA claim cannot be arbitrated but must be litigated in a civil court of competent jurisdiction.

16

## A. Lifeline Forfeited Its Reliance on the Alleged Delegation Clause

In its opening brief, Lifeline argues that a delegation clause in the arbitration agreement confers upon the arbitrator sole authority to decide a "question[ ] of arbitrability"—i.e., whether the agreement applies to Bautista's individual PAGA claims. Lifeline relies upon the following text from the agreement: "This Arbitration Agreement applies to all disputes regarding the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including, but not limited to, any claim that all or any part of this Arbitration Agreement is void or voidable." To prevail on this delegation theory, Lifeline would need to demonstrate that "[t]he delegation of this issue to the arbitrator [is] clear and unmistakable." (See *Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 321–322 (*Cabatit*).)

Bautista counters that Lifeline forfeited its delegation clause argument by failing to invoke it below. In its reply brief, Lifeline does not dispute, and thus tacitly agrees with, Bautista's claim that Lifeline did not bring the purported delegation provision to the trial court's and Bautista's attention.[12] Rather, Lifeline maintains we should excuse its forfeiture because: (1) "[T]he issue is purely legal and the facts are undisputed"; (2) Lifeline was deprived of an opportunity to raise the delegation clause issue because Bautista argued for the first time in her supplemental brief that "the trial court should interpret the

_____

[12] (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 773–774 [holding that the appellants "tacitly concede[d]" a point raised in the respondents' brief by "failing to dispute it in their reply"].)

17

[exclusionary] provision to categorically exclude all PAGA claims on its face," and Lifeline "was not granted leave to file a supplemental brief" in response; and (3) "resolution [of the delegation clause issue] at this stage of review" would be an "efficien[t]" use of judicial resources.

" 'Ordinarily the failure to preserve a point below constitutes a [forfeiture] of the point. [Citation.]' " (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698 (*Meridian Financial Services, Inc.*); see also *Cabatit*, *supra*, 60 Cal.App.5th at pp. 321–322 [deeming an appellant to have forfeited reliance on an alleged delegation clause by failing to raise it during the trial court proceedings].) " '[M]erely because an issue is one of law[ ] does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion.' [Citations.]" (*Meridian Financial Services, Inc.*, at pp. 699–700.) For the reasons set forth below, we decline to exercise our discretion to excuse Lifeline's forfeiture of the delegation clause issue.

First, assuming arguendo Lifeline could not have anticipated that Bautista would raise the exclusionary clause in her supplemental brief, Lifeline's assertion that it had no occasion to invoke the delegation clause below is meritless. Lifeline admits that after Bautista filed her first amended complaint asserting a single PAGA cause of action against Lifeline, the trial court "ordered the parties to submit supplemental briefing on whether the [first amended complaint] contained any arbitrable claims." If—as Lifeline insists—the purported delegation clause "removes . . . from the trial court" its authority to determine whether the individual component of

18

Bautista's PAGA action falls within the scope of the arbitration agreement (boldface, underscoring, & capitalization omitted), then Lifeline should have informed the trial court in supplemental briefing of this limitation on its power. Permitting Lifeline to raise the delegation clause issue for the first time on appeal would allow Lifeline to secure reversal of the denial of the petition to compel arbitration after Lifeline had lulled the trial court into believing it had authority to decide whether the parties agreed to arbitrate Bautista's individual PAGA claims. (See *Cabatit*, *supra*, 60 Cal.App.5th at p. 321 [" ' "[T]he normal situation is that courts decide arbitrability . . . ." ' "].) Lifeline appears to have raised the alleged delegation provision on appeal simply because it disagrees with the trial court's ruling that none of Bautista's PAGA claims is arbitrable. That is not a justification for raising such an issue for the first time on appeal. (See *Meridian*, *supra*, 67 Cal.App.5th at p. 698 [" '[The forfeiture] rule is rooted in the fundamental nature of our adversarial system: The parties must call the court's attention to issues they deem relevant.' "].)

Second, Lifeline's assertion that excusing its forfeiture would serve the interest of judicial economy is not persuasive. According to Lifeline, if we agree with its interpretation of the purported delegation provision, then we should reverse the denial order and instruct the trial court upon remand to (1) direct the arbitrator to decide whether the agreement applies to Bautista's individual PAGA claims, and (2) "stay the action pending resolution" of that issue. Even were we to employ Lifeline's disposition of this appeal, we are not confident that the arbitrator would agree with Lifeline that the exclusionary clause applies only to the non-individual component of Bautista's PAGA cause of

19

action.  We presume the trial court correctly interpreted the exclusionary clause (see Applicable Law & Standard of Review, *ante* [discussing the presumption of correctness]), a presumption that Lifeline could rebut only if we reached the merits of that question, which Lifeline does not want this court to do.  That presumption, when paired with the presumption that the arbitrator will follow the law,[13] strongly suggests the arbitrator would simply arrive at the same conclusion as the trial court regarding the proper interpretation of the exclusionary clause.  Thus, in all likelihood, the whole PAGA action would ultimately be litigated in court anyway.

Lifeline claims on page 10 of the reply brief the purported delegation clause "is clear and unmistakable" because it "grants the arbitrator '*exclusive authority to resolve* all disputes regarding the *interpretation*, applicability, enforceability or formation of this Agreement.' "  (First set of italics added.)  That is not what the document says.  Rather, the clause provides, "*This Arbitration Agreement* applies to all disputes regarding the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including, but not limited to, any claim that all or any part of this Arbitration Agreement is void or voidable."  (Italics added.)  Lifeline's failure to expound upon the actual language of the purported delegation clause counsels against exercising our discretion to decide whether the parties intended to delegate to the arbitrator sole authority to determine the scope of the arbitration agreement.

---

[13]  (See *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 506 ["Normally, we assume the arbitrator will act reasonably and in conformity with the law."].)

In sum, we conclude Lifeline forfeited reliance on the alleged delegation clause and we decline to excuse Lifeline's forfeiture of that issue.

## B. We Reject Lifeline's Assertion That Only Non-Individual PAGA Claims Are Excluded From the Arbitration Agreement

To recap, the trial court found the following provision effects a "wholesale exclusion of PAGA actions" from the arbitration agreement: "This Arbitration Agreement does not apply to Private Attorney General Actions, brought under California Labor Code § 2698 et seq., which must be litigated in a civil court of competent jurisdiction."

In reviewing the trial court's decision de novo under our state's contract law (see Applicable Law & Standard of Review, *ante*), we " 'attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citations].' [Citation.] 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' [Citation.] . . . An interpretation that leaves part of a contract as surplusage is to be avoided." (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185–186 (*Rice*).)

Lifeline argues, "[T]he qualifier 'which must be litigated in a civil court' [in the exclusionary provision] expressly limits the carve-out's reach[ by] preserving the arbitrability of individual PAGA claims while reserving litigation for representative-only [(i.e., non-individual)] claims," as those terms were employed in *Viking River Cruises*. (See also Legal Background, part 2, *ante* [indicating that *Viking River Cruises* used the terms

21

"representative" PAGA claims and "non-individual" PAGA claims interchangeably].)[14]  Lifeline also suggests unless the phrase "which must be litigated in a civil court of competent jurisdiction" is interpreted as restricting the scope of the exclusionary clause to only non-individual claims, the phrase is mere "surplusage." As explained below, we conclude Lifeline's proposed construction of the exclusionary clause violates a fundamental principle of interpretation, to wit, "courts prefer a more natural reading of text to a less natural one, whether that text be found in a statute [citations] or a contract [citations.]"  (See *Kurtin v. Elieff* (2013) 215 Cal.App.4th 455, 471–472.)

Lifeline would have us believe the parties intended to reference *Viking River Cruises*'s dichotomy between individual and non-individual/representative components of PAGA claims without employing any of those three terms.  Lifeline, in essence, posits the parties sought to reference indirectly this distinction by deploying the phrase "which must be litigated in a civil court of competent jurisdiction" in the exclusionary provision.  Yet, the *Viking River Cruises* decision itself indicates the separation of

---

[14] Although Bautista signed the agreement several weeks before the United States Supreme Court denied the petition for rehearing and issued its judgment in *Viking River Cruises* (see Legal Background, part 2, *ante*; Factual & Procedural Background, *ante*), Lifeline concedes in its reply brief that we should treat the contract as having been executed "in a post-*Viking River [Cruises]* landscape," that is, as if the parties were aware the FAA preempts *Iskanian*'s secondary rule that had barred separating PAGA claims into individual and non-individual components.  (See also Legal Background, part 2, *ante* [discussing this holding from *Viking River Cruises*].)  Bautista proceeds on that assumption as well.

22

PAGA claims into these two categories is counterintuitive and potentially confusing, given the ambiguity of the adjective "representative" in this context (i.e., it can refer to a PAGA plaintiff's status as an agent for the state or to an individual raising violations suffered by other employees) and the United States Supreme Court's recognition that our state's high court has remarked that " '[t]here is no individual component to a PAGA action[.]' [Citation.]" (See *Viking River Cruises*, *supra*, 596 U.S. at pp. 648–649, quoting *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 87.)

In light of the complexity of the legal questions implicated by the *Viking River Cruises* decision, we believe that had the parties intended to refer to one of the two meanings of the term "representative" provided in *Viking River Cruises*—i.e., "non-individual" PAGA claims—to contrast those claims with "individual" PAGA claims that are subject to arbitration, the parties would have expressly used those terms in the exclusionary provision. Other elements of the exclusionary clause reinforce our conclusion.

In particular, the parties used a comma followed by the word "which" to separate the portion of the exclusionary provision identifying the matters to which the agreement does not apply (i.e., "Private Attorney General Actions, brought under California Labor Code § 2698 et seq.") from the language identifying the forum at which those claims must be adjudicated, that is, "must be litigated in a civil court of competent jurisdiction." As a grammatical matter, if the parties intended for the textual reference to a judicial forum to function as a restrictive clause limiting the type of claims excluded from the agreement, one would have expected them to have (a) omitted the

23

comma preceding the judicial forum text and (b) employed "that" instead of "which."  (See Scalia & Garner, Reading Law:  The Interpretation of Legal Texts (2012) p. 142.)  To conform to this convention of grammar, the exclusionary provision could have been phrased as follows:  "This Arbitration Agreement does not apply to Private Attorney General Actions brought under California Labor Code § 2698 et seq. that must be litigated in a civil court of competent jurisdiction."  Although we acknowledge this rule of grammar, by itself, is not dispositive of our interpretive inquiry (see Scalia & Garner, Reading Law:  The Interpretation of Legal Texts, *supra*, at p. 142 [noting that grammarians "have been unsuccessful" in "establish[ing] this as a firm rule"]), it is a factor that counsels against Lifeline's construction (see *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at p. 783 [indicating that rules of grammar inform an appellate court's construction of a writing]).

Next, instead of excluding certain PAGA *claims* from the agreement's scope, the clause provides the agreement "does not apply to Private Attorney General *Actions* . . . ."  (Italics added.)  This wording is significant because PAGA's text indicates that the "civil action" it authorizes is one proceeding brought on behalf of "the aggrieved employee . . . and other current or former employees . . . ."  (See fn. 3 & accompanying text, *ante*.)  Indeed, our high court has remarked even if individual PAGA claims are compelled to arbitration, they " 'remain part of the same lawsuit as the representative claims remaining in court[,]' " meaning such PAGA " 'plaintiffs are pursuing *a single PAGA action* "on behalf of [themselves] and other current or former employees," albeit across two fora.' [Citation.]"  (See *Adolph*, *supra*, 14 Cal.5th at p. 1126, italics added.)  Against this legal backdrop,

it makes little sense for the parties to have referred to "Private Attorney General Actions" in the exclusionary clause if their objective were to exempt merely the non-individual components of PAGA actions from arbitration.

Lastly, we reject Lifeline's intimation that unless "which must be litigated in a civil court of competent jurisdiction" were read as a textual limitation on the scope of the exclusionary provision, that phrase would be rendered superfluous. Other provisions of the agreement bar Bautista from seeking relief on "[a]ny claim, dispute or controversy that . . . [Bautista] may have against [Lifeline] . . . arising from, related to, or having any relationship or connection whatsoever, with [her] . . . employment by . . . [Lifeline]" "by way of court or jury trial" and "require[ ] that all such disputes be resolved only by an arbitrator . . . ." If the exclusionary clause did not include language expressly permitting Bautista to litigate her PAGA claims in court, one could conclude that Bautista waived her right to arbitrate those claims in the exclusionary clause *and* agreed not to maintain them in court either. Yet, such a waiver of Bautista's right to prosecute a PAGA action would have been unlawful, even after *Viking River Cruises*. (See Legal Background, part 2, *ante* [noting that *Viking River Cruises* left undisturbed *Iskanian*'s holding that predispute waivers of PAGA actions are unlawful].) Put differently, in light of the agreement's other provisions, we believe the parties included the phrase "which must be litigated in a civil court of competent jurisdiction" to avoid running afoul of *Iskanian*'s prohibition of predispute waivers of PAGA actions by explicitly preserving Bautista's right to litigate them. (See *Rice*, *supra*, 248 Cal.App.4th at p. 186 [" ' "A court must view the

25

language in light of the instrument as a whole and not use a 'disjointed, single-paragraph, strict construction approach.' " ' "].)

In sum, we do not agree with Lifeline that the parties impliedly referenced *Viking River Cruises*'s distinction between individual and non-individual PAGA claims in such a convoluted fashion. Rather, the ordinary and common sense meaning of the exclusionary clause is the one adopted by the trial court, to wit, the provision excludes all PAGA actions from arbitration and authorizes Bautista to litigate them in court. For that reason, we conclude the trial court did not err in denying Lifeline's petition to compel Bautista to arbitrate her individual PAGA claims.

## DISPOSITION

We affirm the trial court's September 25, 2024 order denying defendant and appellant EastWestProto, Inc.'s petition to compel arbitration. Plaintiff and respondent Luz Bautista is awarded her costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

WEINGART, J.                    M. KIM, J.

26